UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Santos Romero Marroquin de Rodriguez, <br><br> Petitioner, <br><br> v. <br><br> DAVID WESLING, Acting Field Office Director, MICHAEL KROL, HSI New England Special Agent in Charge, and TODD LYONS, Acting Director U.S. Immigrations and Customs Enforcement, and KRISTI NOEM, U.S. Secretary of Homeland Security, <br><br> Respondents. | Case No. 25-cv-13210-AK <br><br> **EMERGENCY MOTION FOR PRELIMINARY INJUNCTION & TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

Petitioner Santos Valentina Romero Marroquin de Rodriguez ("Petitioner" or "Ms. Romero") is a Salvadoran mother, grandmother, and survivor of domestic violence who has been detained by Respondents since October 30, 2025. On the evening of January 22, 2026, Ms. Romero was transferred from the Cumberland County Jail in Portland, Maine to the Immigration and Customs Enforcement ("ICE") holding facility in Burlington, Massachusetts, in violation of this Court's order that 96 hours' notice be provided prior to any inter-district transfers. Ms. Romero is scheduled for an individual hearing in immigration court on Monday, January 26, 2026, to present her claims for relief from torture and persecution. She has not been able to speak with her attorney since she was moved to Burlington—a facility with no capacity to house detained noncitizens for any extended period of time. Her ongoing detention and sudden transfer in violation of this Court's prior order are causing irreparable harm by subjecting her to abusive conditions and impeding her

1

right to counsel. Ms. Romero therefore is filing this Motion for a Preliminary Injunction and Temporary Restraining Order and requesting that this Court order her immediate release.

## STATEMENT OF RELEVANT FACTS

Ms. Romero is a single mother who first entered the United States in 2005, fleeing an abusive partner in El Salvador. When she first arrived to the United States, immigration officers detained her and prosecuted her for illegally entering the country. After remaining in detention for six months, separated from her children and without counsel, Ms. Romero was ordered deported on or about May 5, 2006, and returned to El Salvador.

In 2018, Ms. Romero again fled El Salvador, in fear for her life after the kidnapping and disappearance of her youngest son. When Ms. Romero arrived to the United States, immigration officers detained her and reinstated her 2006 removal order. On or about April 16, 2018, ICE released Ms. Romero from their custody under an Order of Supervision ("OSUP"), requiring her to comply with conditions of release including checking in with ICE when requested. Since her release from ICE custody in 2018, Ms. Romero has complied with her scheduled check-ins and has not been charged with any crimes in the United States.

In 2020, after retaining pro bono counsel, Ms. Romero requested a reasonable fear interview ("RFI") to present her claims for protection from persecution and torture in El Salvador. She received no response to that request for over five years.

Ms. Romero was arrested without explanation by ICE on October 30, 2025[1], after she voluntarily appeared at the Intensive Supervision Appearance Program ("ISAP") office in Framingham, Massachusetts. Ms. Romero filed the instant habeas petition that same day. On October 31, 2025, this Court ordered that Ms. Romero not be transferred outside of the district

---

[1] Respondents' post-hoc justification for Ms. Romero's detention is that a warrant was issued for her arrest in El Salvador in 2018. Doc. No. 19 at 8.

unless provided with advance notice of such transfer, and that any transfer should not occur until at least 96 hours after Respondents file notice of the intended move. Doc. No. 4. Respondents subsequently filed an assented to motion to transfer Ms. Romero to Portland, Maine, citing the lack of long-term facilities for women in Massachusetts, and agreeing to notify the Court at least 96 hours in advance of any transfer outside of the District of Maine. This Court granted Respondents' motion, and Ms. Romero was promptly transferred to Maine.

Ms. Romero was held in Cumberland County Jail until the evening of January 22, 2026, when she was abruptly transferred back to the Burlington ICE processing center. She called undersigned counsel prior to her transfer, but has not been permitted to contact counsel since that time. Exh. 1, Declaration of Ellen VanScoyoc, Esq. ("VanScoyoc Decl.") at ¶4.

While Ms. Romero was detained in Maine, she was scheduled for a reasonable fear interview, and an asylum officer found that she had established reasonable fear of torture in El Salvador. Withholding-only proceedings were initiated in the Chelmsford, MA Immigration Court and remain pending. Ms. Romero is scheduled for her individual hearing on Monday, January 26, 2026.

In light of this imminently scheduled hearing, Ms. Romero's attorney drove to Portland, Maine for a scheduled meeting with Ms. Romero on the morning of January 23, 2026. VanScoyoc Decl. at ¶5. At that time, a guard at the jail informed Ms. Romero's counsel that Ms. Romero had been transferred out of the facility on the prior evening at 8:49 PM. *Id.*

On the afternoon of January 23, 2026, Ms. Romero's attorney drove to Burlington, Massachusetts to try again to speak with Ms. Romero and prepare her for her upcoming hearing. VanScoyoc Decl. at ¶7. Ms. Romero's attorney was denied access to Ms. Romero, and was told

3

that there would be no way to arrange in-person, video, or telephonic confidential attorney-client meetings as long as Ms. Romero is held in Burlington, MA. *Id.*

Also on the afternoon of January 23, 2026, Respondents filed a notice of emergency transfer in Ms. Romero's case, giving no basis for the lack of notice of the transfer, other than counsel's lack of advance notice herself. Doc. No. 21. As reason for the transfer, Respondents state that Ms. Romero was moved "due to urgent operational needs, namely that ICE's Enforcement and Removal Operations can no longer house immigration detainees at the Cumberland County Jail." *Id.* at 2. News reports cast doubt on the urgency of this transfer, but do confirm that approximately 50 immigration detainees were suddenly transferred out of Maine on January 22, 2026, to the surprise of the Cumberland County Sheriff—who had publicly criticized ICE operations in Maine earlier that day —and corrections facility staff. *See*, *e.g.*, Morgan Womack, "ICE removes detainees from Cumberland County Jail, cancels contract after sheriff's criticism," *Portland Press Herald* (Jan. 23, 2026).[2]

The denial of Ms. Romero's access to her attorney is consistent with other attorneys' experiences representing clients held by Respondents in Burlington, MA. *See*, *e.g.*, Exh. 2, Declaration of Ondine Sniffin, Esq. ("Sniffin Decl."). Furthermore, conditions in Burlington are reportedly unfit for any long-term housing of noncitizen detainees, with women held in Burlington denied access to bedding, showers, appropriate food, and sanitary supplies. *See* Sniffin Decl. at ¶¶ 10-13; Miriam Wasser, *Inside the Burlington Office ICE Has Used to Detain Immigrants*[3]; Miriam Wasser, *Women in ICE's Burlington office subject to 'inhumane' and unsanitary conditions, lawyers say*.[4] Because Ms. Romero's attorney has been unable to speak with her since her transfer

---

[2] *Available at* https://www.pressherald.com/2026/01/23/ice-detainees-removed-from-cumberland-county-jail/
[3] *Available at* https://www.wbur.org/news/2025/07/18/massachusetts-immigration-ice-burlington-field-office-unsanitary-conditions-diaz-martinez
[4] *Available at* https://www.wbur.org/news/2025/06/11/inhumane-detainments-burlington-ice-dhs-women

on January 22, counsel has been unable to ascertain under what conditions Ms. Romero is being detained, considering the high number of people reportedly transferred from Maine to Massachusetts and the limited holding capacity in Burlington. VanScoyoc Decl. at ¶7.

## ARGUMENT

**I.    Legal standard**

The standard for issuing a temporary restraining order is the same as for a preliminary injunction. *Largess v. Supreme Jud. Ct. for State of Massachusetts*, 317 F. Supp. 2d 77, 81 (D. Mass.), aff'd, 373 F.3d 219 (1st Cir. 2004). "To obtain a preliminary injunction, the plaintiffs bear the burden of demonstrating (1) a substantial likelihood of success on the merits, (2) a significant risk of irreparable harm if the injunction is withheld, (3) a favorable balance of hardships, and (4) a fit (or lack of friction) between the injunction and the public interest." *Nieves Marquez v. Puerto Rico*, 353 F.3d 108, 120 (1st Cir. 2003); *see also*, *e.g.*, *Ercelik v. Hyde*, 2025 WL 1361543, *8 (D. Mass. May 8, 2025); *Dorce v. Wolf*, 506 F. Supp. 3d 142, 144 (D. Mass. 2020); *Bollat Vasquez v. Mayorkas*, 520 F. Supp. 3d 94, 103 (D. Mass. 2021). In this case, all four factors weigh in favor of granting Petitioner's motion.

**II.    Petitioner is likely to succeed on the merits.**

Ms. Romero's amended habeas petition raises constitutional, statutory, and regulatory violations that occurred when her OSUP was revoked and she was detained on October 30, 2025, with no consideration given to her pending U visa application.

First, Ms. Romero is likely to succeed on the argument that release is proper because she was denied an explanation of the reasons for her re-detention and an opportunity to contest her re-detention, as required by 8 C.F.R. § 241.4, the Administrative Procedure Act, and the Due Process Clause of the Fifth Amendment. Several other sessions of this Court have granted

release for this reason. *See*, *e.g.*, *Perez-Escobar v. Moniz*, 792 F. Supp. 3d 224 (D. Mass. 2025) (Saris, J.) (ordering release based on the violation of the petitioner's due process rights when ICE failed to provide meaningful notice of the basis for its revocation of his release); *Guzman Valdez v. McDonald*, 1:25-cv-12308-MJJ (D. Mass. 2025) (Joun, J.) (ordering release where the respondents failed to show that they had given the petitioner adequate notice and a meaningful opportunity to be heard when his OSUP was revoked); *see also, e.g., M.S.L. v. Bostock*, Civ. No. 6:25-cv-01204-AA, 2025 WL 2430267 (D. Or. 2025) (slip copy) (ordering release where Respondents failed to timely provide Petitioner with a valid Notice of Revocation and failed to promptly conduct an informal interview); *Khamba v. Albarran,* 1:25-CV01227 JLT SKO, 2025 WL 2959276, at *10 (E.D. Cal. 2025) (declining to credit post-hoc explanation for petitioner's re-detention); *Hall v. Messinger*, No. 25-cv-667-JJM-PAS at 17 (D. R.I. 2025) (holding that "ICE's failure to provide a noncitizen with adequate notice of its basis for revoking supervised release violates the noncitizen's due process rights" and noting that post hoc justifications for re-detention also violate the Administrative Procedure Act).

Second, Ms. Romero is likely to succeed on the argument that it was improper for the ICE Acting Field Office Director to revoke her OSUP where there is no indication that the Field Office Director made required determinations that revocation was in the public interest and circumstances did not reasonably permit referral of the case to the ICE Director. *See* 8 C.F.R. § 241.4(*l*)(2); *Rombot v. Souza*, 296 F.Supp.3d 383, 387 (D. Mass. 2017) (finding detention unlawful where "[t]he record does not show that Field Office Director Cronen ever made the threshold determination…"); *Ceesay v. Kurzdorfer*, 781 F.Supp.3d 137, 162 (W.D.N.Y. 2025) (finding that ICE had violated its regulations both because an unauthorized official signed an OSUP revocation notice and because, even if proper delegation had occurred, "the government

has not alleged that [the assistant field office director] made the requisite findings—explicitly or otherwise—before revoking [the petitioner's] release").

Third, Ms. Romero is likely to succeed on the argument that she should be released because Respondents' reliance on ICE Directive 11005.4 and failure to consider her pending U visa when deciding to re-detain her was arbitrary and capricious. *See Goncalves Oliveira v. Bedlow*, C.A. No. 25-13228-BEM, 2025 WL 3492110 (D. Mass. 2025) (finding that revocation of ICE's prior victim-sensitive policy was arbitrary and capricious).

Fourth, this Court should order Ms. Romero's immediate release considering the government's violation of the Court's orders prohibiting her inter-district transfer without adequate notice. *See* Doc. Nos. 4, 9, 11. *See Lopez Beloza v. Hyde*, Case 1:25-cv-13499-RGS, ECF Doc. No. 37 at 8 (D. Mass. 2025) (Stearns, J.) (noting, where the government acknowledged having deported the petitioner in violation of a federal court order, that "[t]here is happily no one-size-fits-all solution for seeing that justice be done").

### III.  Petitioner will face a significant risk of irreparable harm in the absence of the provisional relief sought by the motion.

Ms. Romero has already been detained and separated from her medically vulnerable minor child and baby grandchild for over two months.  The processing facility at Burlington, MA is not designed for long-term or even overnight housing of noncitizens. *See* Doc. No. 9, Respondents' Assented-to Motion to Transfer. Reports on the Burlington ICE facilities have documented women forced to sleep on the concrete ground and denied access to proper food, sanitary products, and showers.[5] Where courts have recognized that unlawful immigration detention in itself is a form of irreparable harm, certainly detention in such conditions rises to this level of harm. *See, e.g.*, *Ercelik*, 2025 WL 1361543 at *14 ("The right to be free from

---

[5] *See supra* notes 3 & 4.

7

government detention is one of the most basic guarantees of our democracy. [The Petitioner's] confinement inflicts immense stress and fear, which on its own, constitutes irreparable harm."). *Dorce*, 506 F. Supp. 3d at 145 ("The deprivation of constitutional rights unquestionably constitutes irreparable injury") (internal quotations omitted); *Arias Gudino v. Lowe*, -- F. Supp. 3d --; 2025 WL 1162488, *13 (M.D. Pa. 2025) (collecting cases in which, "[i]n the immigration context, unlawful detention is a sufficient irreparable injury.").

Furthermore, despite being scheduled for an individual hearing on her fear-based claims for relief from removal to El Salvador on this coming Monday, January 26th, and despite counsel's diligent attempts to meet in person with Ms. Romero in both Maine and Massachusetts, Ms. Romero is being denied access to her attorney, making it impossible for her to adequately prepare for her upcoming hearing. The denial of access to counsel is an additional irreparable injury caused by Ms. Romero's current detention.

**IV.     The balance of equities and public interest tilt sharply in favor of granting the provisional relief Petitioner seeks.**

The third and fourth factors—balancing the parties' relative hardships and public interest—"merge when the Government is the opposing party." *Nken v. Holder,* 556 U.S. 418, 435 (2009). Here, Respondents will not be harmed by Petitioner's release, given that Ms. Romero has lived at large in the community without incident for the past seven years, Respondents have alternative means of ensuring Ms. Romero's future appearances including through GPS monitoring, and "Respondents remain free to pursue formal removal proceedings." *Ercelik*, 2025 WL 1361543, at *14. Moreover, "allowing harm to befall [a detained noncitizen] is contrary to the public interest," *Savino v. Souza*, 459 F. Supp. 3d 317, 331-32 (D. Mass. 2020), and public interest is served by "prevent[ing] the violation of a party's constitutional rights,"

*Dorce*, 506 F. Supp. 3d at 145. Therefore, all four preliminary injunction factors weigh in Ms. Romero's favor.

## CONCLUSION

Accordingly, based on the foregoing, Petitioner respectfully requests that the Court issue an order requiring Respondents to release her immediately from ICE custody and not to re-detain her absent a prior showing of changed circumstances.

Respectfully submitted,

/s/ Kelly C. Morgan

Kelly Morgan
MA Bar No. 703737
Central West Justice Center
1 Monarch Place, Ste. 400
Springfield, MA 01144
508 425 2877
kmorgan@cwjustice.org

Ellen VanScoyoc
MA Bar No. 667839
Central West Justice Center
370 Main Street, Ste. 200
Worcester, MA 01608
508 425 2785
evanscoyoc@cwjustice.org

*Counsel for Petitioner*

Dated: January 24, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2026, the foregoing Motion and the Exhibits referenced therein were electronically filed with the Clerk of the Court through the CM/ECF system, which will send notification of such filing to registered participants, including counsel for the Respondent.

/s/ Ellen VanScoyoc                                                                    January 24, 2026
Ellen VanScoyoc
BBO# 667839


**CERTIFICATE OF LOCAL RULE 7.1(A) COMPLIANCE**

I hereby certify that the parties to the above-captioned litigation, through counsel, conferred in good faith concerning the relief sought in the instant Motion but were unable to resolve or narrow the issues.

/s/ Kelly C. Morgan                                                                     January 24, 2026
Kelly Morgan
BBO# 703737