UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SANTOS VALENTINA ROMERO MARROQUIN DE RODRIGUEZ,<br><br>       Petitioner,<br>v.<br><br>PATRICIA HYDE, in her official capacity as Acting Field Office Director, Boston Field Office, U.S. Immigration and Customs Enforcement; MICHAEL KROL, HIS New England Special Agent in Charge; TODD LYONS, in his official capacity as Acting Director, U.S. Immigration and Customs Enforcement; and KRISTI NOEM, U.S. Secretary of Homeland Security,<br><br>       Respondents. | No.: 1:25-CV-13210-AK |

**OPPOSITION TO PETITIONER'S MOTION TO ENFORCE COURT ORDER AND RESPONDENTS' MOTION TO STAY PENDING APPEAL AUTHORIZATION**

       On January 28, 2026, the Court issued a Memorandum and Order on Petition for a Writ of Habeas Corpus in which it granted the Petitioner's Petition for Habeas Corpus and ordered that Petitioner be released on the previously set conditions of release. ECF No. 26 at 10 ("Release Order"). On January 28, 2026, the Petitioner filed a Motion to Enforce Court Order, ECF No. 27, and the Court ordered the Respondents to respond by January 29, 2026. ECF No. 28.

       Respondents hereby oppose the Motion to Enforce Court Order and move to stay the Court's Release Order, pending appeal authorization.

1

## BACKGROUND

A. <u>**Immigration History**</u>

The Petitioner is a native and citizen of El Salvador. Declaration of Sarah LaPointe, Supervisory Detention and Deportation Officer for U.S. Department of Homeland Security ("Lapointe Decl.") ¶ 6, ECF No. 14-1.

On or about November 18, 2005, U.S. Border Patrol ("USBP") agents encountered the Petitioner at or near Eagle Pass, Texas. Lapointe Decl. ¶ 7. Petitioner admitted to the USBP agents that she was a Salvadoran national, who had entered the United States without authorization. *Id.* The USBP agents determined that Petitioner was inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i) because she had entered the United States without inspection, admission, or parole by an Immigration Officer. Petitioner was arrested and taken into custody. *Id.*

On November 19, 2005, a USBP agent served Petitioner with a Notice to Appear, charging Petitioner as inadmissible pursuant to 8 U.S.C. § 1182(a)(6)(A)(i). Lapointe Decl. ¶ 8. Thereafter, the Notice to Appear was filed with the Immigration Court, initiating removal proceedings against Petitioner. *Id.*

On May 5, 2006, the Immigration Judge held a hearing. Petitioner appeared at the duly scheduled hearing, accepted an order of removal to El Salvador, and waived appeal of the order of removal. Lapointe Decl. ¶ 9. This was a final order of removal. *Id.*

On or about June 5, 2006, Petitioner was removed from the United States. Lapointe Decl. ¶ 10.

On or about April 14, 2018, a USBP agent encountered Petitioner at or near Hidalgo, Texas. Lapointe Decl. ¶ 11. The USBP agent determined that Petitioner had entered the United

States unlawfully at a time and place other than as designated by the Attorney General. *Id.* After determining that the Petitioner entered unlawfully, Petitioner was arrested and taken into custody. *Id.*

On April 15, 2018, Petitioner was served with a Notice of Intent/Decision to Reinstate Prior Order. Lapointe Decl. ¶ 12. Petitioner's May 5, 2006, order of removal was reinstated. *Id.* At the time, Petitioner did not request an interview with an Asylum Officer. *Id.* Petitioner was turned over to the custody of ICE. *Id.*

On or about April 16, 2018, Petitioner was released from ICE custody upon issuance of an order of supervision ("OSUP") due to lack of bed space. Lapointe Decl. ¶ 13.

On October 30, 2025, ICE Enforcement and Removal Operations ("ERO") officers encountered Petitioner at or near Framingham, Massachusetts. Lapointe Decl. ¶ 14. At the time of the encounter, ICE ERO officers determined that Petitioner had a final order of removal and that El Salvador has an outstanding warrant for her arrest due to membership in a criminal organization, Mara Salvatrucha ("MS-13"). *Id.* On the same day, ICE ERO took Petitioner into custody. *Id.*

On October 30, 2025, ICE ERO officers personally served Petitioner with a Notice of Revocation of Release, notifying Petitioner that the order of supervision has been revoked because ICE determined that the purpose of release had been served and it was appropriate to enforce the removal order. Lapointe Decl. ¶ 15; Notice of Revocation of Release (Exhibit A). In addition, ICE ERO served Petitioner with a Caregiver Designation at Arrest form to allow her to designate a caregiver for her minor child. *Id.* ICE ERO also served Petitioner with information about the reasonable fear interview process, which was interpreted into Spanish for her. *Id.*

On November 4, 2025, ICE ERO conducted an informal interview in person with

3

Petitioner to afford her an opportunity to respond to the reasons for the revocation of the order of supervision. Lapointe Decl. ¶ 16.

Petitioner was scheduled for a Withholding-Only Hearing, to take place on December 11, 2025, at 8:30 am before the Immigration Court.  *See* Notice of Withholding-Only Hearing (ECF No. 19-2).   ICE agency counsel advised that the hearing was rescheduled because Petitioner had not yet filed her application.  Petitioner filed her application on December 31, 2025, and the hearing was reset for January 26, 2026.  Due to the winter storm on January 26, 2026, the hearing did not proceed on that day, and it has been reset to February 3, 2026.

### B. Criminal History

At the first encounter with USBP on November 18, 2005, the USBP agent observed that Petitioner had a tattoo of a sword through a heart with a serpent that forms an "S" on her left arm and a tattoo inside her lower lip, which spells "R.A." Lapointe Decl. ¶ 19.  At the time, Petitioner claimed that the tattoos were meaningless.  *Id.*  However, the USBP agent noted that these tattoos indicated a possible association with a criminal gang in Central America, MS-13, because these tattoos had been archived in Gang Task Force charts.  *Id.*

After Petitioner's arrest on November 18, 2005, Petitioner was turned over to the custody of the U.S. Marshals for criminal prosecution for illegal entry.  Lapointe Decl. ¶ 20.

On November 22, 2005, a criminal complaint was filed in the U.S. District Court for the Western District of Texas, Del Rio Division, charging Petitioner with a misdemeanor crime of knowingly and willfully entering the United States at a time and place other than as designated by Immigration Officers, in violation of 8 U.S.C. § 1325.  Lapointe Decl. ¶ 21.

On or about December 20, 2005, Petitioner was convicted of illegal entry and sentenced to 120 days of incarceration.  Lapointe Decl. ¶ 22.

On or about September 5, 2018, the Court of First Instance in El Salvador issued an arrest warrant for Petitioner. Lapointe Decl. ¶ 23. The original arrest warrant (in Spanish) and the English translation are attached as Exhibit A.

Petitioner is wanted in El Salvador because she has been identified by the authorities in El Salvador as a member of the MS-13 criminal organization, and she has a criminal history in El Salvador. Lapointe Decl. ¶ 24. Petitioner is wanted for the crimes of "Smuggling contraband into penitentiaries; Extortion; Terrorist Organizations," according to documents that were received from the U.S. Embassy in San Salvador, El Salvador. The Spanish and English versions of these documents are attached as Exhibit B.

### C. Procedural History

On October 30, 2025, Petitioner filed a Petition for Writ of Habeas Corpus ("Petition"). ECF No. 1. On October 31, 2025, Respondents filed an Assented-To Emergency Motion to Transfer Petitioner from ICE's Burlington Field Office to the Cumberland County Jail in Portland, Maine, ECF No. 9, which the Court granted. ECF No. 11. On November 7, 2025, Respondents filed their Opposition to the Petition. ECF No. 14.

On November 20, 2025, Petitioner filed an Amended Petition. ECF No. 17. On December 9, 2025, Respondents filed an Opposition to the Amended Petition. ECF No. 20. Petitioner filed a Reply on December 19, 2025. ECF No. 20.

On January 23, 2026, Respondents filed an Emergency Notice of Transfer, advising that due to urgent operational needs, namely that ICE could no longer house immigrant detainees at the Cumberland County Jail, and there was no other bed space available in Maine, ICE ERO transferred Petitioner back to the ICE Burlington Field Office on a temporary and emergency basis until more permanent bed space could be identified. ECF No. 21 at 1-2.

On January 24, 2026, Petitioner filed an Emergency Motion for Temporary Restraining Order.  ECF No. 22.

On January 26, 2026, the Court ordered Respondents to respond to the Emergency Motion for Temporary Restraining Order.  ECF No. 23.  On January 27, 2026, Respondents filed their Response to the Emergency Motion for Temporary Restraining Order, supported by a Declaration.  ECF No. 25.

On January 28, 2026, the Court entered a Memorandum and Order granting the Petition, ordering that Petitioner be released on the previously set conditions of release, and denying the Emergency Motion for Temporary Restraining Order as moot.  ECF No. 26.  Also on January 28, the Petitioner filed a Motion to Enforce Court Order.  ECF No. 27.

## **ARGUMENT**

The power of district courts and courts of appeals to stay a district court order granting relief to a habeas petitioner pending appeal, rests on common "traditional" factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.  *Hilton v. Braunskill*, 481 U.S. 770 (1987); *see also Nken v. Holder*, 129 S.Ct. 1749 (2009) (applying these traditional factors in the decision to stay a removal order).

In *Hilton v. Braunskill*, 481 U.S. 770 (1987), the Supreme Court held that federal courts, in deciding whether to stay a district court order granting relief to a habeas petitioner, are not limited to considering only risk of flight.  *Id.* at 779.  Instead, the Court found that a court can also consider a petitioner's dangerousness to the community.  *Id.* at *779*.

In the present case, Respondents are seeking to appeal this Court's Release Order because

Petitioner would pose a serious danger to the community if she were released. On or about September 5, 2018, the Court of First Instance in El Salvador issued an arrest warrant for Petitioner.  Lapointe Decl. ¶ 23 and Exhibit A.  Petitioner is wanted in El Salvador because she has been identified by the authorities in El Salvador as a member of the MS-13 criminal organization, and she has a criminal history in El Salvador.  Lapointe Decl. ¶ 24.  Petitioner is wanted for the crimes of "Smuggling contraband into penitentiaries; Extortion; Terrorist Organizations."   (Exhibit B).

In its Release Order, the Court found that Petitioner's procedural due process rights had been violated because Respondents' revocation of her OSUP did not provide her with adequate notice or an opportunity to be heard.  ECF No. 26 at 7.  The proper remedy for a procedural due process violation would have been to require Respondents to provide Petitioner with proper notice and another interview to give her the opportunity to address the OSUP revocation.

Instead, the Court ordered that Petitioner be released on the previously set conditions of release.  However, the previously set conditions for release for Petitioner's OSUP were set in April 2018, which was before the El Salvadoran arrest warrant was issued for Petitioner in September 2018, after which it became known that Petitioner was a member of MS-13, engaged in trafficking, and involved with terrorist organizations.

Because of the strong evidence that Petitioner is a danger to the community, Respondents have a high likelihood of success on their appeal of the Court's Release Order. Likewise, Respondents and the community at large will suffer irreparable injury absent a stay if Petitioner is released into the community, given her gang affiliation and criminal record.   For the same reason, the public interest weighs in favor of keeping Petitioner in custody.  Finally, the issuance of the stay will not substantially injure Petitioner.  She is subject to a final order of

7

removal and thus mandatorily detained under Section 1231.

## CONCLUSION

For the foregoing reasons, Respondents respectfully request that the Court deny the Motion to Enforce Court Order, ECF No. 27, and stay its Release Order pending authorization to appeal the same.

Respectfully submitted,

LEAH B. FOLEY<br>
United States Attorney

Dated: January 29, 2026    By:    */s/ Shawna Yen*  
    Shawna Yen  
    Assistant U.S. Attorney  
    U.S. Attorney's Office  
    John J. Moakley U.S. Courthouse  
    1 Courthouse Way, Suite 9200  
    Boston, MA  02210  
    Tel.: 617-748-3100  
    Email: Shawna.Yen@usdoj.gov

## LOCAL RULE 7.1(a)(2) CERTIFICATION

I, Shawna Yen, Assistant United States Attorney certify that, I emailed Petitioner's counsel on January 28, 2026, seeking her position on this Motion. Petitioner opposes the Motion.

Dated: January 29, 2026    By:    */s/ Shawna Yen*  
    Shawna Yen  
    Assistant U.S. Attorney  
    U.S. Attorney's Office  
    1 Courthouse Way, Suite 9200  
    Boston, MA  02210  
    Tel.: 617-748-3100  
    Email: Shawna.Yen@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Dated:  January 29, 2026         By:    */s/ Shawna Yen*
                                                        SHAWNA YEN
                                                        Assistant United States Attorney